UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. BK16-81034 |
| | ) | CHAPTER 7 |
| GENNEAN MARIE SCOTT | ) | |
| | ) | MOTION FOR RELIEF |
| | ) | FROM AUTOMATIC STAY |
| Debtor. | ) | |

COMES NOW Lynn E. Olson, Jill Bobeck, Jay Olstmanns d/b/a Oltmanns Warehouse (collectively referred to as "Movant"), by and through its undersigned attorneys, and for its Motion for Relief from Automatic Stay, herein states and alleges as follows:

1.      This Court has exclusive jurisdiction over this proceeding.  The Debtor filed her Chapter 7 petition on July 7, 2016.

2.      Movant is the owner of property located 2929-2933 Keystone Drive, Omaha, Douglas County, Nebraska.  On or about April 7, 2015, Movant, by and through its managing agent, entered into a Lease Agreement with Debtor and Mary Rollins (collectively "Tenants") whereby Movant leased to Tenants approximately 3,000 square feet of area located at 2929-2933 Keystone Drive, Omaha, Nebraska ("Leased Premises") for the operation of a dance studio by which the premises were leased to Tenants for a period of three (3) years beginning on April 1, 2015.

3.      Tenants have failed to pay the monthly rents from March 2016 through present and other charges submitted during April 2016 through present as required under the terms of the Lease Agreement and have continued to fail to pay further monthly rents and other charges. Such amounts are continuing to accrue under the terms of the Lease Agreement.

4.      On June 16, 2016, the Movant commenced an eviction, unlawful detainer action

and declaratory judgment against the Tenants involving the above Leased Premises and liability

under the Lease Agreement for the rent, interest and other charges and expenses as each

continues to accrue in the Douglas County District Court, CI 16-5011, entitled *Lynn E. Olson, et
al. v. Gennean M. Scott and Marry Rollins.*

5.      Movant is entitled to relief from the automatic stay and in support thereof

affirmatively states that Movant lacks adequate protection of an interest in property and

(a)      The Debtor does not have any equity in such property; and

(b)      Such property is not necessary to an effective reorganization.

6.      The Movant further seeks relief from the automatic stay in order to pursue its

claim in the above lawsuit against the Debtor in the event the debt could become

nondischargeable under 11 U.S.C. § 523 *et seq.*, if the Debtor converts to a Chapter 13

bankruptcy or her Chapter 7 bankruptcy is dismissed for cause.

7.      The Movant seeks relief from the automatic stay to permit the Movant to pursue

its eviction, unlawful detainer action and declaratory judgment proceeding against the Debtor.

8.      That Movant further relies on its Affidavit in support of Motion for Relief filed

herewith.

9.      That the Order granting Relief from the Automatic Stay should provide that Rule

4001(a)(3) is not applicable and Movant may immediately implement and enforce this Order

granting Relief from the Automatic Stay.

WHEREFORE, Movant respectfully prays for an order granting relief from the automatic

stay provisions of 11 U.S.C. § 362(a) to permit the Movant to pursue its eviction, unlawful

detainer action and declaratory judgment proceeding against the Debtor.

2

LYNN E. OLSON, JILL BOBECK, JAY
OLSTMANNS d/b/a OLTMANNS WAREHOUSE,
Movant

By:    /s/ Amy S. Jorgensen
      Amy S. Jorgensen - #23215
      WHITE & JORGENSEN
      209 S. 19th Street, Suite 310
      Omaha, NE 68102
      (402) 346-5700

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2016, I electronically filed the foregoing document and the supporting Affidavit with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to the Chapter 7 Trustee and Debtor's attorney, Shereece Dendy and sent notification of such to non-CM/ECF participants by sending the same by U.S. Mail, postage prepaid:

Gennean M. Scott
1924 Lothrop Street
Omaha, NE 68110

     /s/ Amy S. Jorgensen
     Amy S. Jorgensen

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN RE:               )      CASE NO. BK16-81034

                    )      CHAPTER 7

GENNEAN MARIE SCOTT    )

                    )      **AFFIDAVIT OF**

                    )      **BLAINE STRATTON**

        Debtor.        )

STATE OF NEBRASKA     )

                         ) ss.

COUNTY OF DOUGLAS    )

I, Blaine Stratton, being first duly sworn, upon oath, affirm and state as follows:

1.      I am a resident of the state of Nebraska.

2.      I am more than 21 years of age, and I suffer from no legal disability.  All the matters recited in my Affidavit are known to me personally.

3.      I am employed as a Property Manager of Byron Reed Company, Inc. who, on behalf of the Movant, Lynn E. Olson, Jill Bobeck, Jay Olstmanns d/b/a Oltmanns Warehouse, manages the Movant's property located at  2929-2933 Keystone Drive, Omaha, Douglas County, Nebraska ("Leased Premises").

4.      As part of the duties of Property Manager, I am responsible for the day to day operations, such as accounts receivable, executing leases on behalf of the Movant, record keeping and is a custodian of records with regard to the Leased Premises.  As such, I have personal knowledge of the circumstances, events, and facts involving the Leased Premises.

5.      On or about April 7, 2015, Movant, by and through its managing agent, entered into a Lease Agreement with Tenants whereby Movant leased to Tenants approximately 3,000 square feet of area located at the Leased Premises for the operation of a dance studio by which the premises were leased to Tenants for a period of three (3) years beginning on April 1, 2015.  A

true and correct copy of the Business Property Lease is attached hereto as Exhibit "1" and incorporated herein by this reference (hereinafter "Lease Agreement").

6.     The Debtor asserts a possessory interest in the Leased Premises based upon a lease that is in default.

7.     On June 3, 2016, the Movant, by and through its managing agent, served the Tenants with written notice to vacate said Property for nonpayment of rent within three (3) days, which period has fully elapsed, and yet the Tenants willfully continue to hold said Property against the Movant. After the three-day notice was served, Tenants have not paid the amount in default to Movant. A copy of the three-day notice is attached hereto as Exhibit "2" and incorporated herein by this reference.

8.     With regard to the Lease Agreement, Tenants have failed to pay the monthly rents from March 2016 through present and other charges submitted during April 2016 through present as required under the terms of the Lease Agreement and have continued to fail to pay further monthly rents and other charges. The total amount due as of June 16, 2016, is $6,751.46. Such amounts are continuing to accrue under the terms of the Lease Agreement.

9.     Before the Debtor's bankruptcy petition was filed, Movant filed a complaint for unlawful detainer and declaratory judgment against the Tenants on June 16, 2016. A true and correct copy of the Complaint is attached hereto has Exhibit "3" and incorporated herein by this reference.

10.     The Debtor does not have an interest in the Leased Premises that could be assumed or assigned under 11 U.S.C. § 365.

11.     The Leased Premises is not necessary to an effective reorganization because it is Commercial property but no reorganization is reasonably anticipated.

2

FURTHER AFFIANT SAYETH NOT.

DATED this _12_ day of _July_, 2016.

_____
BLAINE STRATTON

STATE OF NEBRASKA    )
                     ) ss.
COUNTY OF DOUGLAS    )


SUBSCRIBED AND SWORN to before me, a Notary Public qualified for said County and State, personally came Blaine Stratton, known to me to be the identical person who signed the foregoing instrument, and acknowledged the execution thereof to be his voluntary act and deed.

Witness my hand and notarial seal on this _12_ day of _July_, 2016.

GENERAL NOTARY - State of Nebraska
R. MICHAEL ALT
My Comm. Exp. May 18, 2018

_____
NOTARY PUBLIC

3

BUSINESS PROPERTY LEASE

THIS LEASE is entered into this __7__ day of __April__ 20/5 between Oltmanns Warehouses, Landlord, and Gennean M. Scott & Mary Rollins, Tenant.

1. PREMISES: Landlord leases to Tenant the real property located at 2920-2933 Keystone Drive, Omaha, NE 68134 (the "Premises"), containing approximately 3,000 square feet of area as shown on exhibit "A", on the following terms and conditions.

2. TERM: This Lease shall be for a term of Three (3) Years beginning on the 1st day of April, 2015, and ending on the 31 day of March, 2018, unless terminated earlier as provided in this Lease.

If for any reason the Premises is delivered to Tenant on any date before or after the term commencement date, rental for the period between the date of possession and the term commencement date shall be adjusted on a pro rata basis. Such earlier or later taking of possession shall not change the termination date of this Lease. This Lease shall not be void or voidable in the event of a late delivery by Landlord, nor shall Landlord be liable to Tenant for any resulting loss or damage.

3. USE OF PREMISES: The Premises are leased to Tenant, and are to be used by Tenant, for the purposes of a dance studio and for no other purpose. Tenant agrees to use the Premises in such a manner as to not interfere with the rights of other tenants in the Real Estate, to comply with all applicable governmental laws, ordinances, and regulations in connection with its use of the Premises, including without limitation all environmental laws, to keep the Premises in a clean and sanitary condition, and to use all reasonable precaution to prevent waste, damage, or injury to the Premises.

4. RENT:

(a) Base Rent. The total Base Rent under this Lease is Forty Five Thousand and 00/100 Dollars ($45,000.00). Tenant agrees to pay rent to Landlord at Byron Reed Company, Inc. 2615 Harney Street, Omaha, NE 68131, or at any other place Landlord may designate in writing, in lawful money of the United States, in monthly installments in advance, on the first day of each month, as follows.

| For the period from | April 1, 2015 | To | March 31, 2016 | $1,187.50 | Per month. |
|---|---|---|---|---|---|
| For the period from | April 1, 2016 | To | March 31, 2017 | $1,250.00 | Per month. |
| For the period from | April 1, 2017 | To | March 31, 2018 | $1,312.50 | Per month. |

(b) Operating Expenses. In addition to the Base Rent, Tenant shall pay a pro-rata share of operating expenses of the real estate of which the Premises are part, parking areas, and grounds ("Real Estate"). "Operating expenses" shall mean all costs of maintaining and operating the Real Estate, including but not limited to all taxes and special assessments levied upon the Real Estate, fixtures, and personal property used by Landlord at the Real Estate, all insurance costs, all costs of labor, material and supplies for maintenance, repair, replacement, and operation of the Real Estate, including but not limited to line painting, lighting, snow removal, landscaping, cleaning, depreciation of machinery and equipment used in such maintenance, repair and replacement, and management costs, including Real Estate superintendents. Operating Expenses shall not include property additions and capital improvements to the Real Estate, alterations made for specific tenants, depreciation of the Real Estate, debt service on long-term debt or income taxes paid by Landlord.

"Tenant's pro-rata share" shall mean the percentage determined by dividing the square feet of the Premises as shown in Paragraph 1, by _____ square feet.

Tenant's pro-rata share of the Operating Expenses shall be determined on an annual basis for each calendar year ending on December 31 and shall be pro-rated for the number of months Tenant occupied the Premises if Tenant did not occupy the Premises the full year. Tenant shall pay _____ Dollars ($ _____) per month, on the first of each month in advance with rent for Tenant's estimated pro-rata share of the Operating Expenses. Landlord may change this amount at any time upon written notice to Tenant. At the end of each year, an analysis of the total year's Operating Expenses shall be presented to Tenant and Tenant shall pay the amount, if any, by which the Tenant's pro-rata share of the Operating Expenses for the year exceeded the amount of the estimated Operating Expenses paid by Tenant shall be paid by Tenant to Landlord within thirty (30) days after Tenant's receipt of the statement. In the event this Lease terminates at any time other than the last day of the year, the excess Operating Expenses shall be determined as of the date of termination. If Tenant's payments of estimated Operating Expenses exceed the amount due Landlord for that calendar year, Landlord shall, at its option, provided Tenant is not then in default under this Lease, apply the excess as a credit against Tenant's other obligations under this Lease or promptly refund such excess to Tenant if the term of this Lease has already expired, in either case without interest to Tenant.

(c) Payment of Rent: Tenant agrees to pay the Base Rent as and when due, together with Tenant's share of the Operating Expenses and all other amounts required to be paid by Tenant under this Lease. In the event of nonpayment of any amounts due under this Lease, whether or not designated as rent, Landlord shall have all the rights and remedies provided in this Lease or by law for failure to pay rent.

(d) Late Charge: If the Tenant fails to pay the Base Rent together with the Tenant's share of the Operating Expenses and all other amounts required to be paid by Tenant under this Lease, ON OR BEFORE THE TENTH DAY after such payments are due, Tenant agrees to pay Agent a late charge of $100.00.

(e) Security Deposit: As partial consideration for the execution of this Lease, the Tenant has delivered to Landlord for Landlord's use and possession the sum of $1,187.50 as a Security Deposit. The Security Deposit will be returned to Tenant at the expiration of this Lease if Tenant has fully complied with all covenants and conditions of this Lease.

5. SERVICES: Landlord shall furnish NONE to the Premises during normal business hours, and at such other times as Landlord may deem necessary or desirable, in the manner customary to the Real Estate. Landlord shall have the right to discontinue any service during any period for which rent is not promptly paid by Tenant. Landlord shall not be liable for damages, nor shall the rental be abated, for failure to furnish, or delay in furnishing, any service when failure to furnish, or delay in furnishing, is occasioned in whole or in part by needful repairs, renewals, or improvements, or by any strike or labor controversy, or by any accident or casualty whatsoever, or by any unauthorized act or default of any employee of Landlord, or for any other cause of causes beyond the control of Landlord Tenant shall pay when due, all water, gas, electricity, sewer use fees, incurred at or chargeable to the Premises.

6. ASSIGNMENT OR SUBLEASE: Tenant shall not assign this Lease or sublet the whole or any part of the Premises, transfer this Lease by operation of law or otherwise, or permit any other person except agents and employees of Tenant to occupy the Premises, or any part thereof, without the prior written consent of Landlord. Landlord may consider any factor it deems relevant in determining whether to withhold consent including, but not limited to, the following (a) financial responsibility of the new tenant, (b) identity and business character of the new tenant, (b) nature and legality of the proposed use of the Premises. Landlord shall have the right to assign its interest under this Lease or the rent hereunder.

1

EXHIBIT

"1"

tabbies

7. TENANT'S IMPROVEMENTS: Tenant shall have the right to place partitions and fixtures and make improvements or other alterations in the interior of the Premises at its own expense. Prior to commencing any such work, Tenant shall first obtain the written consent of Landlord for the proposed work. Landlord may, as a condition to its consent, require that the work be done by Landlord's own employees and/or under Landlord's supervision, but at the expense of Tenant, and that Tenant give sufficient security that the Premises will be completed free and clear of liens and in a manner satisfactory to Landlord. Upon termination of this Lease, at Landlord's option, Tenant will repair and restore the Premises to its former condition, at Tenant's expense, or any such improvements, additions, or alterations installed or made by Tenant, except Tenant's trade fixtures, shall become part of the Premises and the property of the Landlord. Tenant may remove its trade fixtures at the termination of this Lease provided Tenant is not then in default and provided further that Tenant repairs any damage caused by such removal.

8.  REPAIRS:  Landlord agrees to maintain in good condition, and repair as necessary the foundations, exterior walls and the roof of the Premises.

Tenant agrees that it will make, at its own cost and expense, all repairs and replacements to the Premises not required to be made by Landlord, including, but not limited to, all interior and exterior doors, door frames, windows, plate glass, and the heating, air conditioning, plumbing and electrical systems servicing the Premises. Tenant agrees to do all redecorating, remodeling, alterations, and painting required by it during the term of the Leases, at its own cost and expense, to pay for any repairs to the Premises or the Real Estate made necessary by any negligence or carelessness of Tenant or any of its agents or employees or persons permitted on the Real Estate by Tenant, and to maintain the Premises in a safe, clean, neat, and sanitary condition. Tenant shall be entitled to no compensation for inconvenience, injury, or loss of business arising from the making of any repairs by Landlord, Tenant, or other tenants to the Premises or the Real Estate. Tenant shall be responsible to maintain the sidewalk in front of the demised premises free and clear of debris, ice and snow.

9. CONDITION OF PREMISES:  Except as provided herein, Tenant agrees that no promises, representations, statements, or warranties have been made on behalf of Landlord to Tenant respecting the condition of the Premises, or the manner of operating the Real Estate, or the making of any repairs to the Premises. By taking possession of the Premises, Tenant acknowledges that the Premises were in good and satisfactory condition when possession was taken.  Tenant shall, at the termination of this Lease, by lapse of time or otherwise, remove all of Tenant's property and surrender the Premises to Landlord in as good condition as when Tenant took possession, normal wear excepted.

10. PERSONAL PROPERTY AT RISK OF TENANT:  All personal property in the Premises shall be at the risk of Tenant only. Landlord shall not be liable for any damage to any property of Tenant or its agents or employees in the Premises caused by any reason whatsoever, including, without limitation, fire, theft, steam, electricity, sewage, gas or odors, or from water, rain, or snow which may leak into, issue or flow into the Premises from any part of the Real Estate, or from any other place, or for any damage done to Tenant's property in moving same to or from the Real Estate or the Premises. Tenant shall give Landlord, or its agents, prompt written notice of any damage to or defects in water pipes, gas or warning or cooling apparatus in the Premises.

11. LANDLORD'S RESERVED RIGHTS:  Without notice to Tenant, without liability to Tenant for damage or injury to property, person, or business, and without effecting an eviction of Tenant or a disturbance of Tenant's use or possession or giving rise to any claim for set off or abatement of rent, Landlord shall have the right to.

(a)  Change the name or street address of the Real Estate.
(b)  Install and maintain signs on the Real Estate.
(c)  Have access to all mail chutes according to the rules of the United States Post Office Department.
(d)  At reasonable times, to decorate, and to make, at its own expense, repairs, alterations, additions, and improvements, structural or otherwise, in or to the Premises, the Real Estate, or part thereof; and any adjacent Real Estate., land, street or alley, and during such operations to take into and through the Premises or any part of the Real Estate all materials required, and to temporarily close or suspend operation of entrances, doors, corridors, elevators, or other facilities to do so.
(e)  Possess passkeys to the Premises.
(f)  Show the Premises to prospective tenants at reasonable times.
(g)  Take any and all reasonable measures, including inspections or the making of repairs, alterations, and additions and improvements to the Premises or to the Real Estate, which Landlord deems necessary or desirable for the safety, protection, operation, or preservation of the Premises or the Real Estate.
(h)  Approve all sources furnishing signs, painting, and/or lettering to the Premises, and approve all signs on the Premises prior to installation thereof.
(i)  Establish rules and regulations for the safety, care, order, operation, appearance, and cleanliness of the Real Estate and to make modifications thereto.

12. INSURANCE: Tenant shall not use or occupy the Premises or any part thereof in any manner which could invalidate any policies of insurance now or hereafter placed on the Real Estate or increase the risks covered by insurance on the Real Estate or necessitate additional insurance premiums or policies of insurance, even if such use may be in furtherance of Tenants business purposes. In the event any policies of insurance are invalidated by acts or omissions of Tenant, Landlord shall have the right to terminate this Lease or, at Landlord's option, to charge Tenant for extra insurance premiums required on the Real Estate on account of the increased risk caused by Tenant's use and occupancy of the Premises. Each party hereby waives all claims for recovery from the other for any loss or damage to any of its property insured under valid and collectible insurance policies to the extent of any recovery collectible under such policies; provided that this waiver shall apply only when permitted by the applicable policy of insurance.

13. INDEMNITY: Tenant shall indemnify, hold harmless, and defend Landlord from and against, and Landlord shall not be liable to Tenant on account of, any and all costs, expenses, liabilities, losses, damages, suits, actions, fines, penalties, demands, or claims of any kind, including reasonable attorneys fees, asserted by or on behalf of any person, entity, or governmental authority arising out of or in any way connected with either (a) a failure by Tenant to perform any of the agreements, terms, or conditions of this Lease required to be performed by Tenant; (b) a failure by Tenant to comply with any laws, statutes, ordinances, regulations, or orders of any governmental authority; or (c) any accident, death, or personal injury, or damage to, or loss or theft of property which shall occur on or about the Premises, or the Real Estate, except as the same may be the result of the negligence of Landlord, its employees, or agents.

14. LIABILITY INSURANCE: Tenant agrees to procure and maintain continuously during the entire term of this Lease, a policy or policies of commercial general liability insurance from a company or companies acceptable to Landlord, at Tenant's own cost and expense, insuring Landlord and Tenant from all claims, demands or actions; such policy or policies shall in addition to insuring Tenant protect and name the Landlord and Landlord's managing agent as additional insured and shall provide coverage in a combined single limit per occurrence of at least $ 1,000,000.00  for claims  demands or actions for bodily injury, death or property damage made by or on behalf of any person or persons, firm or corporation arising from, related to, or connected with the conduct and operation of Tenant's business in the Premises, or arising out of and connected with the use and occupancy of the Real Estate by the Tenant. All such insurance shall provide that Landlord shall be given a minimum of ten (10) days notice by the insurance company prior to cancellation, termination or change of such insurance, Tenant shall provide Landlord with copies of the policies or certificates evidencing that such insurance in full force and effect and stating the term and provisions thereof. If Tenant fails to comply with such requirements for insurance, Landlord may, but shall not be obligated ,to, obtain such insurance and keep the same in effect, and Tenant agrees to pay Landlord, upon demand, the premium cost thereof.

15.  DAMAGE BY FIRE OR OTHER CASUALTY:  If, during the term of this Lease, the Premises shall be so damaged by fire or any other cause except Tenant's negligent or intentional act so as to render the Premises untenantable, the rent shall be abated while the Premises remain untenantable; and in the event of such damage, Landlord shall elect whether to repair the Premises or to cancel this Lease, and shall notify Tenant in writing of its election within sixty (60) days after such damage.  In the event Landlord elects to repair the Premises, the work or repair shall begin promptly and shall be carried on without unnecessary delay.  In the event Landlord elects not to repair the Premises, the Lease shall be deemed canceled as of the date of the damage. Such damage shall not extend the Lease term.

2

16.  CONDEMNATION:  If the whole or any part of the Premises shall be taken by public authority under the power of eminent domain, then the term of this Lease shall cease on that portion of the Premises so taken, from the date of possession, and the rent shall be paid to that date, with a proportionate refund by Landlord to Tenant of such rent as may have been paid by Tenant in advance. If the portion of the Premises taken is such that it prevents the practical use of the Premises for Tenant's purposes, then Tenant shall have the right either (a) to terminate this Lease by giving written notice of such termination to Landlord not later than thirty (30) days after the taking, or (b) to continue in possession of the remainder of the Premises, except that the rent shall be reduced in proportion to the area of the Premises taken. In the event of any taking or condemnation of the Premises, in whole or in part, the entire resulting award of damages shall be the exclusive property of Landlord, including all damages awarded as compensation for diminution in value to the leasehold, without any deduction for the value of any unexpired term of this Lease, or for any other estate or interest in the Premises now or hereafter vested in Tenant.

17.  DEFAULT OR BREACH:  Each of the following events shall constitute a default or a breach of this Lease by Tenant;

(a) If Tenant fails to pay Landlord any rent or other payments when due hereunder;

(b) If Tenant vacates or abandons the Premises;

(c) If Tenant files a petition in bankruptcy or insolvency or for reorganization under any bankruptcy act, or voluntarily takes advantage of any such act by answer or otherwise, or makes an assignment for the benefit of creditors;

(d) If involuntary proceedings under any bankruptcy or insolvency act shall be instituted against Tenant, or if a receiver or trustee shall be appointed of all or substantially all of the property of Tenant, and such proceedings shall not be dismissed or the receivership or trusteeship vacated within thirty (30) days after the institution or appointment; or

(e) If Tenant fails to perform or comply with any other term or condition of this Lease, or any of the rules and regulations established by Landlord, and if such nonperformance shall continue for a period after (10) days after notice thereof by Landlord to Tenant, time being of the essence.

18.  EFFECT OF DEFAULT:  In the event of any default or breach hereunder, in addition to any other right or remedy available to Landlord, either at law or in equity, Landlord may exert any one or more of the following rights:

(a) Landlord may re-enter the Premises immediately and remove the property and personnel of Tenant, and shall have the right, but not the obligation, to store such property in a public warehouse or at a place selected by Landlord, at the risk and expense of Tenant.

(b) Landlord may retake the Premises and may terminate this Lease by giving written notice of termination to Tenant.  Without such notice, Landlord's retaking will not terminate the Lease. On termination, Landlord may recover from Tenant all damages proximately resulting from the breach, including the cost of recovering the Premises and the difference between the rent due for the balance of the Lease term as though the Lease had not been terminated and the fair market rental value of the Premises for the balance of the Lease term as though the Lease had not been terminated which sum shall be immediately due Landlord from Tenant.

(c) Landlord may relet the Premises or any part thereof for any term without terminating this Lease, at such rent and on such terms as it may, choose. Landlord may make alterations and repairs to the Premises. In addition to Tenant's liability to Landlord for breach of this Lease, Tenant shall be liable for all expenses of the reletting, for any alterations and repairs made, and for the rent due for the balance of the Lease term, which sum shall be immediately due Landlord from Tenant. The amount due Landlord will be reduced by the net rent received by Landlord during the remaining term of this Lease from reletting the Premises or any part thereof. If during the remaining term of this Lease Landlord receives more than the amount due Landlord under this sub-paragraph, the Landlord shall pay such excess to Tenant, but only to the extent Tenant has actually made payment pursuant to this sub-paragraph.

19.  SURRENDER-HOLDING OVER:  Tenant shall, upon termination of this Lease, whether by lapse of time or otherwise, peaceably and promptly surrender the Premises to Landlord. If Tenant remains in possession after the termination of this Lease, without a written lease duly executed by the parties, Tenant shall be deemed a trespasser. If Tenant pays, and Landlord accepts, rent for a period after termination of this Lease, Tenant shall be deemed to be occupying the Premises only as a tenant from month to month, subject to all the terms, conditions, and agreements of this Lease, except that the rent shall be two times the monthly rent specified in the lease immediately before termination.

20. SUBORDINATION AND ATTORNMENT:  Landlord reserves the right to place liens and encumbrances on the Premises superior in lien and effect to this Lease. This Lease, and all rights of Tenant hereunder, shall, at the option of Landlord, be subject and subordinate to any liens and encumbrances now or hereafter imposed by Landlord upon the Premises or the Real Estate or any part thereof, and Tenant agrees to execute, acknowledge, and deliver to Landlord, upon request, any and all instruments that may be necessary or proper to subordinate this Lease and all rights herein to any such lien or encumbrance as may be required by Landlord.

In the event any proceedings are brought for the foreclosure of any mortgage on the Premises, Tenant will attorn to the purchaser at the foreclosure sale and recognize such purchaser as the Landlord under this Lease. The purchaser, by virtue of such foreclosure, shall be deemed to have assumed, as substitute Landlord, the terms and conditions of this Lease until the resale or other disposition of its interest. Such assumption, however, shall not be deemed in acknowledgment for the validity of any then existing claims of Tenant against the prior Landlord.

Tenant agrees to execute and deliver such further assurances and other documents, including a new lease upon the same terms and conditions contained herein, confirming the foregoing, as such purchaser may reasonably request. Tenant waives any right of election to terminate this Lease because of any such foreclosure proceedings.

21.  NOTICES:  Any notice or demands given hereunder shall be in writing and personally delivered or sent by first class mail postage prepaid to Landlord at___Byron Reed Company, Inc. 2615 Harney Street, Omaha, NE 68131_____ and also to Tenant at Gennean M. Scott & Mary Rollins, 2929-33 Keystone Drive, Omaha, NE 68134_____ or at such other address as either party may from time to time designate in writing.  Each such notice shall be deemed to have been given at the time it shall be personally delivered to such address or deposited in the United States mail in the manner prescribed herein.

22.  COMPLIANCE WITH ADA:  Tenant shall be responsible for all costs of complying with the Americans with Disabilities Act (ADA) and all similar laws and regulations within the Premises, including the removal of barriers which do not necessitate the removal or modification of load bearing walls.

23.  SUBSTITUTION OF OTHER PREMISES:  Landlord may upon thirty days notice to Tenant substitute for the Premises other premises in the Real Estate (the "New Premises"), provided that the New Premises shall be reasonably usable for Tenant's business hereunder; and, if Tenant is already in occupancy of the Premises, then in addition Landlord shall pay the reasonable expenses of moving Tenant from the Premises to the New Premises and for improving the New Premises so that they are substantially similar to the Premises.

3

24.   MISCELLANEOUS:

(a)   Binding on Assigns:  All terms, conditions, and agreements of this Lease shall be binding upon, apply, and inure to the benefit of the parties hereto and their respective heirs, representatives, successors, and permitted assigns.

(b)   Amendment in Writing:  This Lease contains the entire agreement between the parties and may be amended only by subsequent written agreement.

(c)   Waiver -None:  The failure of Landlord to insist upon strict performance of any of the terms, conditions and agreements of this Lease shall not be deemed a waiver of any of its rights or remedies hereunder and shall not be deemed a waiver of any subsequent breach or default of any of such terms, conditions, and agreements. The doing of anything by Landlord which Landlord is not obligated to do hereunder shall not impose any future obligation on Landlord nor otherwise amend any provisions of this Lease.

(d)   No Surrender:  No surrender of the Premises by Tenant shall be effected by Landlord's acceptance of the keys to the Premises or of the rent due hereunder, or by any other means whatsoever, without Landlord's written acknowledgment that such acceptance constitutes a surrender .

(e)   Captions:  The captions of the various paragraphs in this Lease are for convenience only and do no define, limit, describe, or construe the contents of such paragraphs.

(f)   Applicable Law:  This Lease shall be governed by and construed in accordance with the laws of the State of Nebraska.

(g)   Partial Invalidity:  If any provision of this Lease is invalid or unenforceable to any extent, then that provision and the remainder of this Lease shall continue in effect and be enforceable to the fullest extent permitted by law.

25.   BROKERS:  The brokers involved in this transaction are:

☒   Agent for Landlord   __Byron Reed Company, Inc. 2615 Harney Street, Omaha , NE 68131__

☐   Agent for Tenant   _____

☐   Dual agent representing both Landlord and Tenant   _____

☐   Landlord and Tenant acknowledge that   _____
      is being paid a fee by Landlord and this fee will be shared by the Brokers based on their separate agreement.

☐   Landlord and Tenant will each compensate their respective Brokers.

26.   OTHER PROVISIONS:   __Supplemental agreements consisting of paragraphs #27 through #32, inclusive, are attached__
__hereto and made a part of this lease.__
_____

Any additional provisions of this Lease shall be in writing and attached as an addendum hereto.

Until this Lease is executed on behalf of all parties hereto, it shall be construed as an offer to lease by Tenant to Landlord.

IN WITNESS WHEREOF, the parties hereto have executed this Lease the day and year first above written.

Byron Reed Company, Inc.                     Agent___          Gennean M. Scott & Mary Rollins_____
Landlord                                                                Tenant

By _____          By _____

Its   R. Michael Ali,                                        Its _____
      President                                                          

PERSONAL GUARANTEE

The undersigned hereby absolutely and unconditionally guarantee unto the Landlord the payment of the rent and the performance of all of the covenants under the Lease and all renewals and extensions thereof by the Tenant and hereby waive notice of any default under the Lease and agree that this liability shall not be released or affected by an extension of time for payment, by any forbearance by the Landlord, or by any assignment or modification of this lease.

Dated this _____ day of _____, 20_____.

By: _____          By: _____

Name _____          Name _____

Street Address _____          Street Address _____

City, State Zip _____          City, State Zip _____

4

Supplemental agreements consisting of paragraphs #27 through #32, inclusive follow herewith and are made a part of a lease between Oltmanns Warehouse, Landlord, and Geneau Scott & Mary Rollins, Tenant, covering the premises known as 2929-2933 Keystone Drive, Omaha, Douglas County, Nebraska, for the period April 1, 2015 through March 31, 2018.

#27.  TAX ESCALATION: The landlord shall pay all regular consolidated real estate taxes levied and assessed against the Landlord's land and improvements, provided, however, the Tenant shall pay as additional rental, within ten (10) days after demand by the Landlord, the Tenant's pro rata proportion of any increase in said taxes over the base year of said taxes, which base year will be the taxes due 2015 to Douglas County. Said taxes being approximately $10,919.76. Increase in taxes as provided for in this paragraph shall be deemed to include any increase which results from an increase in mill levy or from an increase in assessed value. The Tenant's pro rata share is 25.00%.

#28.  CHARGE FOR USE OF COMMON AREAS: The Tenant shall pay to the Landlord all costs and expenses of every kind and nature paid or incurred by the Landlord during the lease term in operating, equipping, policing and protecting, lighting, repairing, and maintaining the common areas. Such costs and expenses shall include, but not be limited to maintaining the common areas, cleaning, fire protection, snow and ice removal, asphalt and concrete repairs and replacements, line striping, trash removal, costs and expenses of planting, replanting and replacing flowers and landscaping, water and sewer use fee charges, premiums for liability and property damage insurance, fees for required licenses and permits, supplies administrative costs equal to ten (10%) per cent of the total costs of operating and maintaining the common area and any other charges applicable to the maintenance and operation of the common area. The Tenant's proportionate share is 25.00% of the total charges. The Tenant shall be billed quarterly showing the amounts expended for such common area maintenance and shall pay such bill within ten (10) days.

#29.  PARKING: The Landlord hereby grants to Tenant, its Agents, employees, customers and invitees the non-exclusive right, during the term of this lease, to use for customer and employee parking only the parking area as may from time to time be designated by the Landlord. The use of said common parking shall be subject to reasonable regulations as the Landlord shall make from time to time.

#30.  SIGN CRITERIA: The Tenant may place signs in and about the demised premises except that the number, size, placement and design of all exterior signs and signs upon any common area or in any display window shall be subject to the Landlord's prior approval.

#31.  UNLICENSED AND/OR INOPERABLE VEHICLES: The Tenant agrees to remove all unlicensed and/or inoperable vehicles from the property upon seven (7) days written notice from Landlord or Landlord's Agent. Vehicles remaining on the property after such notification will be towed off the property at Tenant's expense.

#32.  ESSENCE DATE: Time being of the essence, this lease must be completed on behalf of all parties on or before April 7, 2015.

INITIAL MSR   INITIAL



2921-2941 Keystone Drive

EXHIBIT "A"



June 3, 2016


Gennean Scott &
Mary Rollins
2933 Keystone Drive
Omaha, NE 68134

### THREE DAY NOTICE TO VACATE

Under the terms of your Lease for 2933 Keystone Drive, Omaha, Nebraska, you are to pay monthly installments of rent on or before the first of each month. Your failure to pay such amounts when due constitutes an event of default under the Lease. As of the date of this letter, you are currently in default with a total balance due of $6,651.46.


Payment in full will be accepted in the form of a cashiers check, money order or cash only.


In light of this default, Landlord has elected to exercise its rights under the terms of the Lease to take possession of the premises. This Notice is given pursuant to §25-21,221 of the Nebraska Revised Statutes, and if you do not leave the premises by the end of the third day after this Notice is served upon you, the Landlord or its managing agent will commence a forcible entry and detainer action in court to obtain possession of the premises. The Landlord's election to take possession of the premises is not a termination of your Lease and obligations. Therefore, you are contractually liable to pay rent to the Landlord for the remainder of your lease term.


Sincerely,

Blaine Stratton
Property Manager

BS/ac

K:\Managed Properties\Ohmanns\Correspondence\3-day notice.docx

EXHIBIT

"2"

tabbies

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| LYNN E. OLSON, JILL BOBECK, | ) | CASE NO. CI 16- 5011 |
| JAY OLSTMANNS d/b/a OLTMANNS | ) | |
| WAREHOUSE, | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT** |
| | ) | (Restitution and Money Damages) |
| vs. | ) | |
| | ) | |
| GENNEAN M. SCOTT and MARY ROLLINS, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiffs, by and through their attorneys, and state the following

causes of action against the Defendants:

## GENERAL ALLEGATIONS

1.      Plaintiffs Lynn E. Olson, Jill Bobeck, Jay Olstmanns d/b/a Oltmanns Warehouse

are owners of the premises commonly known as 2929-2933 Keystone Drive, Omaha, Douglas

County, Nebraska.

2.      That Byron Reed Company, Inc. is the Plaintiffs' managing agent for the above

Property.

3.      At all material times herein, Defendants Gennean M. Scott and Mary Rollins

(hereinafter collectively "Defendants"), were occupants of the above premises, pursuant to a

written lease between Plaintiff and Defendants.

4.      On or about April 7, 2015, Plaintiffs, by and through its managing agent, entered

into a Lease Agreement with Defendants whereby Plaintiffs leased to Defendant approximately

3,000 square feet of area located at 2929-2933 Keystone Drive, Omaha, Nebraska ("Leased

NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose.
This firm and the attorney signing this document may be considered debt collectors under the Federal Fair
Debt Collection Practices Act.

**EXHIBIT**

tabbies®

" 3 "

Premises") for the operation of a dance studio by which the premises were leased to Defendants

for a period of three (3) years beginning on April 1, 2015. A true and correct copy of the

Business Property Lease is attached hereto as Exhibit "A" and incorporated herein by this

reference (hereinafter "Lease Agreement").

    5.    Plaintiffs delivered possession of the Leased Premises to Defendants in

accordance with the terms of the Lease Agreement.

    6.    The Lease Agreement commenced on April 1, 2015 and was to expire on March

31, 2018.

    7.    Pursuant to the terms of the Lease Agreement, Defendants agreed to make

monthly rental payments as contemplated by the Lease Agreement. In addition, Defendants

agreed to pay their pro rata share of other charges required by the terms of the Lease Agreement.

    8.    To date, the Plaintiffs have performed their obligations under the Lease

Agreement.

    9.    The Lease Agreement requires that throughout the term of the Lease, Defendants

are to pay the monthly base rent on or before the first day of each month for the term of the

Lease.

    10.    The Lease Agreement requires that throughout the term of the Lease, Defendants

are to pay their pro rata share of the Common Area Charges within ten (10) days after

Defendants' receipt of the statement from Plaintiffs along with their pro rata share of real estate

taxes.

    11.    With regard to the Lease Agreement, Defendants have failed to pay the monthly

**NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose. This firm and the attorney signing this document may be considered debt collectors under the Federal Fair Debt Collection Practices Act.**

2

rents from March 2016 through June 2016 and other charges submitted during April 2016

through June 2016 as required under the terms of the Lease Agreement and have continued to fail

to pay further monthly rents and other charges.  Such amounts are continuing to accrue under the

terms of the Lease Agreement.

      12.    On June 3, 2016, the Plaintiffs, by and through its managing agent, served the

Defendants with written notice to vacate said Property for nonpayment of rent within three (3)

days, which period has fully elapsed, and yet the Defendants willfully continue to hold said

Property against the Plaintiffs.  A copy of the three-day notice is attached hereto as Exhibit "B"

and incorporated herein by this reference.

      13.    As of June 11, 2016, Defendants, jointly and severally, were liable under the

Lease Agreement in the total amount of $6,751.46 which amount includes rent and other charges

due under the Lease Agreement and which continues to accrue.  In addition to its judgment for

damages against the Defendants, Plaintiffs request the Court to enter a declaratory judgment

declaring Defendants to be liable to the Plaintiffs under the Lease Agreement for rent and other

charges and/or obligations under the Agreement as such obligations become due, less any sums

the Plaintiffs are able to recoup by reletting the premises.  Plaintiffs request the Court to retain

jurisdiction over this case following the entry of final judgment to ascertain and enter as a

judgment the amount of Plaintiffs' continuing damages.

      14.    Attached to this Complaint, marked as Exhibit "C", and by this reference

incorporated herein and made apart hereof is the notice required under the Fair Debt Collection

Practices Act.

<u>NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose.
This firm and the attorney signing this document may be considered debt collectors under the Federal Fair
Debt Collection Practices Act.</u>     3

15.    That pursuant to the Disposition of Personal Property Landlord and Tenant Act, the following notice of right to reclaim property is hereby given to the Defendants:

When you vacate the premises set forth above, any personal property remaining may be claimed at the address set forth above. Unless you pay the reasonable costs of storage for all the above-described property and take possession of the property which you claim not later than seven (7) days after notice is personally delivered or, if mailed, not less than fourteen (14) days after notice is deposited in the mail, this property may be disposed of pursuant to the Disposition of Personal Property Landlord and Tenant Act. If you fail to claim the property by the deadline and if the property is reasonably believed to be worth less than One Thousand Dollars ($1,000.00), it may be kept, sold or destroyed without further notice if you fail to reclaim it within the time indicated in this notice. If the property is reasonably believed to be worth more than One Thousand Dollars ($1,000.00), and you fail to claim it by the deadline, it will be sold at a public sale after notice of the sale has been given by publication. You have the right to bid on the property at this sale. After the property is sold and the costs of storage, advertising and sale are deducted, the remaining money will be turned over to the State Treasurer pursuant to the Uniform Disposition of Unclaimed Property Act. You may claim the remaining money from the office of the State Treasurer as provided in such Act.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, jointly and severally, in the amount of $6,751.46, together with pre-judgment interest, post-judgment interest and the costs expended herein. Plaintiffs further pray that the Court enter a declaratory judgment finding

NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose. This firm and the attorney signing this document may be considered debt collectors under the Federal Fair Debt Collection Practices Act.

4

that the Defendants are liable under the Lease Agreement for the rent, interest and other charges

and expenses as each accrues; and further, retain jurisdiction over this matter to enter its final

judgment for such damages.

> LYNN E. OLSON, JILL BOBECK, JAY
> OLSTMANNS d/b/a/ OLTMANNS
> WAREHOUSES, Plaintiffs,
>
> BY: _Amy S. Jorgensen_
> Amy S. Jorgensen, #26218
> C. Thomas White, #14488
> Thomas M. White, #17452
> WHITE & JORGENSEN
> 209 South 19th Street, Suite 310
> Omaha, Nebraska  68102
> (402) 346-5700
>
> ATTORNEYS FOR PLAINTIFFS

NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose.
This firm and the attorney signing this document may be considered debt collectors under the Federal Fair
Debt Collection Practices Act.

# BUSINESS PROPERTY LEASE

THIS LEASE is entered into this _7_ day of _April_ 20_15_ between <u>Oltmanns Warehouses</u>, Landlord, and <u>Gennean M. Scott & Mary Rollins</u>, Tenant.

1. PREMISES: Landlord leases to Tenant the real property located at <u>2920-2933 Keystone Drive, Omaha, NE 68134</u> (the "Premises"), containing approximately <u>3,000</u> square feet of area as shown on exhibit "A", on the following terms and conditions.

2. TERM: This Lease shall be for a term of <u>Three (3) Years</u> beginning on the <u>1st</u> day of <u>April</u>, <u>2015</u>, and ending on the <u>31</u> day of <u>March</u>, <u>2018</u>, unless terminated earlier as provided in this Lease.

If for any reason the Premises is delivered to Tenant on any date before or after the term commencement date, rental for the period between the date of possession and the term commencement date shall be adjusted on a pro rata basis. Such earlier or later taking of possession shall not change the termination date of this Lease. This Lease shall not be void or voidable in the event of a late delivery by Landlord, nor shall Landlord be liable to Tenant for any resulting loss or damage.

3. USE OF PREMISES: The Premises are leased to Tenant, and are to be used by Tenant, for the purposes of <u>a dance studio</u> and for no other purpose. Tenant agrees to use the Premises in such a manner as to not interfere with the rights of other tenants in the Real Estate, to comply with all applicable governmental laws, ordinances, and regulations in connection with its use of the Premises, including, without limitation all environmental laws, to keep the Premises in a clean and sanitary condition, and to use all reasonable precaution to prevent waste, damage, or injury to the Premises.

4. RENT:

(a) Base Rent. The total Base Rent under this Lease is <u>Forty Five Thousand and 00/100</u> Dollars (<u>$45,000.00</u>). Tenant agrees to pay rent to Landlord at <u>Byron Reed Company, Inc. 2615 Harney Street, Omaha, NE 68131</u>, or at any other place Landlord may designate in writing, in lawful money of the United States, in monthly installments in advance, on the first day of each month, as follows:

| For the period from | April 1, 2015 | To | March 31, 2016 | $1,187.50 | Per month. |
| For the period from | April 1, 2016 | To | March 31, 2017 | $1,250.00 | Per month. |
| For the period from | April 1, 2017 | To | March 31, 2018 | $1,312.50 | Per month. |

~~(b) Operating Expenses: In addition to the Base Rent, Tenant shall pay a pro rata share of operating expenses of the real estate of which the Premises are part, parking areas and grounds ("Real Estate"). "Operating expenses" shall mean all costs of maintaining and operating the Real Estate, including but not limited to all taxes and special assessments levied upon the Real Estate, fixtures, and personal property used by Landlord at the Real Estate, all insurance costs, all costs of labor, material and supplies for maintenance, repair, replacement, and operation of the Real Estate, including but not limited to line painting, lighting, snow removal, landscaping, cleaning, depreciation of machinery and equipment used in such maintenance, repair and replacement, and management costs, including Real Estate superintendents. Operating Expenses shall not include property additions and capital improvements to the Real Estate, alterations made for specific tenants, depreciation of the Real Estate, debt service on long term debt or income taxes paid by Landlord.~~

~~"Tenant's pro rata share" shall mean the percentage determined by dividing the square feet of the Premises as shown in Paragraph 1, by _____ square feet.~~

~~Tenant's pro rata share of the Operating Expenses shall be determined on an annual basis for each calendar year ending on December 31 and shall be pro rated for the number of months Tenant occupied the Premises if Tenant did not occupy the Premises the full year. Tenant shall pay _____ Dollars ($_____) per month on the first of each month in advance with rent for Tenant's estimated pro rata share of the Operating Expenses. Landlord may change this amount at any time upon written notice to Tenant. At the end of each year, an analysis of the total year's Operating Expenses shall be presented to Tenant and Tenant shall pay the amount, if any, by which the Tenant's pro rata share of the Operating Expenses for the year exceeded the amount of the estimated Operating Expenses paid by Tenant shall be paid by Tenant to Landlord within thirty (30) days after Tenant's receipt of the statement. In the event this Lease terminates at any time other than the last day of the year, the excess Operating Expenses shall be determined as of the date of termination. If Tenant's payments of estimated Operating Expenses exceed the amount due Landlord for that calendar year, Landlord shall, at its option, provided Tenant is not then in default under this Lease, apply the excess as a credit against Tenant's other obligations under this Lease or promptly refund such excess to Tenant if the term of this Lease has already expired, in either case without interest to Tenant.~~

(c) Payment of Rent: Tenant agrees to pay the Base Rent as and when due, together with Tenant's share of the Operating Expenses and all other amounts required to be paid by Tenant under this Lease. In the event of nonpayment of any amounts due under this Lease, whether or not designated as rent, Landlord, shall have all the rights and remedies provided in this Lease or by law for failure to pay rent.

(d) Late Charge: If the Tenant fails to pay the Base Rent together with the Tenant's share of the Operating Expenses and all other amounts required to be paid by Tenant under this Lease, ON OR BEFORE THE TENTH DAY after such payments are due, Tenant agrees to pay Agent a late charge of $100.00.

(e) Security Deposit: As partial consideration for the execution of this Lease, the Tenant has delivered to Landlord for Landlord's use and possession the sum of $1,187.50 as a Security Deposit. The Security Deposit will be returned to Tenant at the expiration of this Lease if Tenant has fully complied with all covenants and conditions of this Lease.

5. SERVICES: Landlord shall furnish <u>NONE</u> to the Premises during normal business hours, and at such other times as Landlord may deem necessary or desirable, in the manner customary to the Real Estate. Landlord shall have the right to discontinue any service during any period for which rent is not promptly paid by Tenant. Landlord shall not be liable for damages, nor shall the rental be abated, for failure to furnish, or delay in furnishing, any service when failure to furnish, or delay in furnishing, is occasioned in whole or in part by needful repairs, renewals, or improvements, or by any strike or labor controversy, or by any accident or casualty whatsoever, or by any unauthorized act or default of any employee of Landlord, or for any other cause or causes beyond the control of Landlord. Tenant shall pay when due, all water, gas, electricity, sewer use fees, incurred at or chargeable to the Premises.

6. ASSIGNMENT OR SUBLEASE: Tenant shall not assign this Lease or sublet the whole or any part of the Premises, transfer this Lease by operation of law or otherwise, or permit any other person except agents and employees of Tenant to occupy the Premises, or any part thereof, without the prior written consent of Landlord. Landlord may consider any factor it deems relevant in determining whether to withhold consent including, but not limited to, the following: (a) financial responsibility of the new tenant, (b) identity and business character of the new tenant, (c) nature and legality of the proposed use of the Premises. Landlord shall have the right to assign its interest under this Lease or the rent hereunder.

EXHIBIT "A"

1

7. TENANT'S IMPROVEMENTS: Tenant shall have the right to place partitions and fixtures and make improvements or other alterations in the interior of the Premises at its own expense. Prior to commencing any such work, Tenant shall first obtain the written consent of Landlord for the proposed work. Landlord may, as a condition to its consent, require that the work be done by Landlord's own employees and/or under Landlord's supervision, but at the expense of Tenant, and that Tenant give sufficient security that the Premises will be completed free and clear of liens and in a manner satisfactory to Landlord. Upon termination of this Lease, at Landlord's option, Tenant will repair and restore the Premises to its former condition, at Tenant's expense, or any such improvements, additions, or alterations installed or made by Tenant, except Tenant's trade fixtures, shall become part of the Premises and the property of the Landlord. Tenant may remove its trade fixtures at the termination of this Lease provided Tenant is not then in default and provided further that Tenant repairs any damage caused by such removal.

8. REPAIRS: Landlord agrees to maintain in good condition, and repair as necessary the foundations, exterior walls and the roof of the Premises.

Tenant agrees that it will make, at its own cost and expense, all repairs and replacements to the Premises not required to be made by Landlord, including, but not limited to, all interior and exterior doors, door frames, windows, plate glass, and the heating, air conditioning, plumbing and electrical systems servicing the Premises. Tenant agrees to do all redecorating, remodeling, alterations, and painting required by it during the term of the Leases, at its own cost and expense, to pay for any repairs to the Premises or the Real Estate made necessary by any negligence or carelessness of Tenant or any of its agents or employees or persons permitted on the Real Estate by Tenant, and to maintain the Premises in a safe, clean, neat, and sanitary condition. Tenant shall be entitled to no compensation for inconvenience, injury, or loss of business arising from the making of any repairs by Landlord, Tenant, or other tenants to the Premises or the Real Estate. Tenant shall be responsible to maintain the sidewalk in front of the demised premises free and clear of debris, ice and snow.

9. CONDITION OF PREMISES: Except as provided herein, Tenant agrees that no promises, representations, statements, or warranties have been made on behalf of Landlord to Tenant respecting the condition of the Premises, or the manner of operating the Real Estate, or the making of any repairs to the Premises. By taking possession of the Premises, Tenant acknowledges that the Premises were in good and satisfactory condition when possession was taken. Tenant shall, at the termination of this Lease, by lapse of time or otherwise, remove all of Tenant's property and surrender the Premises to Landlord in as good condition as when Tenant took possession, normal wear excepted.

10. PERSONAL PROPERTY AT RISK OF TENANT: All personal property in the Premises shall be at the risk of Tenant only. Landlord shall not be liable for any damage to any property of Tenant or its agents or employees in the Premises caused by any reason whatsoever, including, without limitation, fire, theft, steam, electricity, sewage, gas or odors, or from water, rain, or snow which may leak into, issue or flow into the Premises from any part of the Real Estate, or from any other place, or for any damage done to Tenant's property in moving same to or from the Real Estate or the Premises. Tenant shall give Landlord, or its agents, prompt written notice of any damage to or defects in water pipes, gas or warming or cooling apparatus in the Premises.

11. LANDLORD'S RESERVED RIGHTS: Without notice to Tenant, without liability to Tenant for damage or injury to property, person, or business, and without effecting an eviction of Tenant or a disturbance of Tenant's use or possession or giving rise to any claim for set off or abatement of rent, Landlord shall have the right to.

(a) Change the name or street address of the Real Estate.
(b) Install and maintain signs on the Real Estate.
(c) Have access to all mail chutes according to the rules of the United States Post Office Department.
(d) At reasonable times, to decorate, and to make, at its own expense, repairs, alterations, additions, and improvements, structural or otherwise, in or to the Premises, the Real Estate, or part thereof; and any adjacent Real Estate, land, street, or alley, and during such operations to take into and through the Premises or any part of the Real Estate all materials required, and to temporarily close or suspend operation of entrances, doors, corridors, elevators, or other facilities to do so.
(e) Possess passkeys to the Premises.
(f) Show the Premises to prospective tenants at reasonable times.
(g) Take any and all reasonable measures, including inspections or the making of repairs, alterations, and additions and improvements to the Premises or to the Real Estate, which Landlord deems necessary or desirable for the safety, protection, operation, or preservation of the Premises or the Real Estate.
(h) Approve all sources furnishing signs, painting, and/or lettering to the Premises, and approve all signs on the Premises prior to installation thereof.
(i) Establish rules and regulations for the safety, care, order, operation, appearance, and cleanliness of the Real Estate and to make modifications thereto.

12. INSURANCE: Tenant shall not use or occupy the Premises or any part thereof in any manner which could invalidate any policies of insurance now or hereafter placed on the Real Estate or increase the risks covered by insurance on the Real Estate or necessitate additional insurance premiums or policies of insurance, even if such use may be in furtherance of Tenants business purposes. In the event any policies of insurance are invalidated by acts or omissions of Tenant, Landlord shall have the right to terminate this Lease or, at Landlord's option, to charge Tenant for extra insurance premiums required on the Real Estate on account of the increased risk caused by Tenant's use and occupancy of the Premises. Each party hereby waives all claims for recovery from the other for any loss or damage to any of its property insured under valid and collectible insurance policies to the extent of any recovery collectible under such policies; provided that this waiver shall apply only when permitted by the applicable policy of insurance.

13. INDEMNITY: Tenant shall indemnify, hold harmless, and defend Landlord from and against, and Landlord shall not be liable to Tenant on account, of, any and all costs, expenses, liabilities, losses, damages, suits, actions, fines, penalties, demands, or claims of any kind, including reasonable attorneys fees, asserted by or on behalf of any person, entity, or governmental authority arising out of or in any way connected with either (a) a failure by Tenant to perform any of the agreements, terms, or conditions of this Lease required to be performed by Tenant; (b) a failure by Tenant to comply with any laws, statutes, ordinances, regulations, or orders of any governmental authority; or (c) any accident, death, or personal injury, or damage to, or loss or theft of property which shall occur on or about the Premises, or the Real Estate, except as the same may be the result of the negligence of Landlord, its employees, or agents.

14. LIABILITY INSURANCE: Tenant agrees to procure and maintain continuously during the entire term of this Lease, a policy or policies of commercial general liability insurance from a company or companies acceptable to Landlord, at Tenant's own cost and expense, insuring Landlord and Tenant from all claims, demands or actions; such policy or policies shall in addition to insuring Tenant protect and name the Landlord and Landlord's managing agent as additional insured and shall provide coverage in a combined single limit per occurrence of at least $ 1,000,000.00 for claims demands or actions for bodily injury, death or property damage made by or on behalf of any person or persons, firm or corporation arising from, related to, or connected with the conduct and operation of Tenant's business in the Premises, or arising out of and connected with the use and occupancy of the Real Estate by the Tenant. All such insurance shall provide that Landlord shall be given a minimum of ten (10) days notice by the insurance company prior to cancellation, termination or change of such insurance, Tenant shall provide Landlord with copies of the policies or certificates evidencing that such insurance in full force and effect and stating the term and provisions thereof. If Tenant fails to comply with such requirements for insurance, Landlord may, but shall not be obligated ,to, obtain such insurance and keep the same in effect, and Tenant agrees to pay Landlord, upon demand, the premium cost thereof.

15. DAMAGE BY FIRE OR OTHER CASUALTY: If, during the term of this Lease, the Premises shall be so damaged by fire or any other cause except Tenant's negligent or intentional act so as to render the Premises untenantable, the rent shall be abated while the Premises remain untenantable; and in the event of such damage, Landlord shall elect whether to repair the Premises or to cancel this Lease, and shall notify Tenant in writing of its election within sixty (60) days after such damage. In the event Landlord elects to repair the Premises, the work or repair shall begin promptly and shall be carried on without unnecessary delay. In the event Landlord elects not to repair the Premises, the Lease shall be deemed canceled as of the date of the damage. Such damage shall not extend the Lease term.

2

16. CONDEMNATION: If the whole or any part of the Premises shall be taken by public authority under the power of eminent domain, then the term of this Lease shall cease on that portion of the Premises so taken, from the date of possession, and the rent shall be paid to that date, with a proportionate refund by Landlord to Tenant of such rent as may have been paid by Tenant in advance. If the portion of the Premises taken is such that it prevents the practical use of the Premises for Tenant's purposes, then Tenant shall have the right either (a) to terminate this Lease by giving written notice of such termination to Landlord not later than thirty (30) days after the taking, or (b) to continue in possession of the remainder of the Premises, except that the rent shall be reduced in proportion to the area of the Premises taken. In the event of any taking or condemnation of the Premises, in whole or in part, the entire resulting award of damages shall be the exclusive property of Landlord, including all damages awarded as compensation for diminution in value to the leasehold, without any deduction for the value of any unexpired term of this Lease, or for any other estate or interest in the Premises now or hereafter vested in Tenant.

17. DEFAULT OR BREACH: Each of the following events shall constitute a default or a breach of this Lease by Tenant;

(a) If Tenant fails to pay Landlord any rent or other payments when due hereunder;

(b) If Tenant vacates or abandons the Premises;

(c) If Tenant files a petition in bankruptcy or insolvency or for reorganization under any bankruptcy act, or voluntarily takes advantage of any such act by answer or otherwise, or makes an assignment for the benefit of creditors;

(d) If involuntary proceedings under any bankruptcy or insolvency act shall be instituted against Tenant, or if a receiver or trustee shall be appointed of all or substantially all of the property of Tenant, and such proceedings shall not be dismissed or the receivership or trusteeship vacated within thirty (30) days after the institution or appointment; or

(e) If Tenant fails to perform or comply with any other term or condition of this Lease, or any of the rules and regulations established by Landlord, and if such nonperformance shall continue for a period after (10) days after notice thereof by Landlord to Tenant, time being of the essence.

18. EFFECT OF DEFAULT: In the event of any default or breach hereunder, in addition to any other right or remedy available to Landlord, either at law or in equity, Landlord may exert any one or more of the following rights:

(a) Landlord may re-enter the Premises immediately and remove the property and personnel of Tenant, and shall have the right, but not the obligation, to store such property in a public warehouse or at a place selected by Landlord, at the risk and expense of Tenant.

(b) Landlord may retake the Premises and may terminate this Lease by giving written notice of termination to Tenant. Without such notice, Landlord's retaking will not terminate the Lease. On termination, Landlord may recover from Tenant all damages proximately resulting from the breach, including the cost of recovering the Premises and the difference between the rent due for the balance of the Lease term as though the Lease had not been terminated and the fair market rental value of the Premises for the balance of the Lease term as though the Lease had not been terminated which sum shall be immediately due Landlord from Tenant.

(c) Landlord may relet the Premises or any part thereof for any term without terminating this Lease, at such rent and on such terms as it may, choose. Landlord may make alterations and repairs to the Premises. In addition to Tenant's liability to Landlord for breach of this Lease, Tenant shall be liable for all expenses of the reletting, for any alterations and repairs made, and for the rent due for the balance of the Lease term, which sum shall be immediately due Landlord from Tenant. The amount due Landlord will be reduced by the net rent received by Landlord during the remaining term of this Lease from reletting the Premises or any part thereof. If during the remaining term of this Lease Landlord receives more than the amount due Landlord under this sub-paragraph, the Landlord shall pay such excess to Tenant, but only to the extent Tenant has actually made payment pursuant to this sub-paragraph.

19. SURRENDER-HOLDING OVER: Tenant shall, upon termination of this Lease, whether by lapse of time or otherwise, peaceably and promptly surrender the Premises to Landlord. If Tenant remains in possession after the termination of this Lease, without a written lease duly executed by the parties, Tenant shall be deemed a trespasser. If Tenant pays, and Landlord accepts, rent for a period after termination of this Lease, Tenant shall be deemed to be occupying the Premises only as a tenant from month to month, subject to all the terms, conditions, and agreements of this Lease, except that the rent shall be two times the monthly rent specified in the lease immediately before termination.

20. SUBORDINATION AND ATTORNMENT: Landlord reserves the right to place liens and encumbrances on the Premises superior in lien and effect to this Lease. This Lease, and all rights of Tenant hereunder, shall, at the option of Landlord, be subject and subordinate to any liens and encumbrances now or hereafter imposed by Landlord upon the Premises or the Real Estate or any part thereof, and Tenant agrees to execute, acknowledge, and deliver to Landlord, upon request, any and all instruments that may be necessary or proper to subordinate this Lease and all rights herein to any such lien or encumbrance as may be required by Landlord.

In the event any proceedings are brought for the foreclosure of any mortgage on the Premises, Tenant will attorn to the purchaser at the foreclosure sale and recognize such purchaser as the Landlord under this Lease. The purchaser, by virtue of such foreclosure, shall be deemed to have assumed, as substitute Landlord, the terms and conditions of this Lease until the resale or other disposition of its interest. Such assumption, however, shall not be deemed in acknowledgment by the purchaser of the validity of any then existing claims of Tenant against the prior Landlord.

Tenant agrees to execute and deliver such further assurances and other documents, including a new lease upon the same terms and conditions contained herein, confirming the foregoing, as such purchaser may reasonably request. Tenant waives any right of election to terminate this Lease because of any such foreclosure proceedings.

21. NOTICES: Any notice or demands given hereunder shall be in writing and personally delivered or sent by first class mail postage prepaid to

Landlord at____Byron Reed Company, Inc. 2615 Harney Street, Omaha , NE 68131_____ and

also to Tenant at Gennean M. Scott & Mary Rollins, 2929-33 Keystone Drive, Omaha, NE 68134_____ or at

such other address as either party may from time to time designate in writing. Each such notice shall be deemed to have been given at the time it shall be personally delivered to such address or deposited in the United States mail in the manner prescribed herein.

22. COMPLIANCE WITH ADA: Tenant shall be responsible for all costs of complying with the Americans with Disabilities Act (ADA) and all similar laws and regulations within the Premises, including the removal of barriers which do not necessitate the removal or modification of load bearing walls.

23. SUBSTITUTION OF OTHER PREMISES: Landlord may upon thirty days notice to Tenant substitute for the Premises other premises in the Real Estate (the "New Premises"), provided that the New Premises shall be reasonably usable for Tenant's business hereunder; and, if Tenant is already in occupancy of the Premises, then in addition Landlord shall pay the reasonable expenses of moving Tenant from the Premises to the New Premises and for improving the New Premises so that they are substantially similar to the Premises.

24.    MISCELLANEOUS:

(a)    Binding on Assigns:  All terms, conditions, and agreements of this Lease shall be binding upon, apply, and inure to the benefit of the parties hereto and their respective heirs, representatives, successors, and permitted assigns.

(b)    Amendment in Writing:  This Lease contains the entire agreement between the parties and may be amended only by subsequent written agreement.

(c)    Waiver -None:  The failure of Landlord to insist upon strict performance of any of the terms, conditions and agreements of this Lease shall not be deemed a waiver of any of its rights or remedies hereunder and shall not be deemed a waiver of any subsequent breach or default of any of such terms, conditions, and agreements. The doing of anything by Landlord which Landlord is not obligated to do hereunder shall not impose any future obligation on Landlord nor otherwise amend any provisions of this Lease.

(d)    No Surrender:  No surrender of the Premises by Tenant shall be effected by Landlord's acceptance of the keys to the Premises or of the rent due hereunder, or by any other means whatsoever, without Landlord's written acknowledgment that such acceptance constitutes a surrender .

(e)    Captions:  The captions of the various paragraphs in this Lease are for convenience only and do no define, limit, describe, or construe the contents of such paragraphs.

(f)    Applicable Law:  This Lease shall be governed by and construed in accordance with the laws of the State of Nebraska.

(g)    Partial Invalidity:  If any provision of this Lease is invalid or unenforceable to any extent, then that provision and the remainder of this Lease shall continue in effect and be enforceable to the fullest extent permitted by law.

25.    BROKERS:  The brokers involved in this transaction are:

☒    Agent for Landlord    Byron Reed Company, Inc. 2615 Harney Street, Omaha , NE 68131

☐    Agent for Tenant  _____

☐    Dual agent representing both Landlord and Tenant  _____

☐    Landlord and Tenant acknowledge that _____
is being paid a fee by Landlord and this fee will be shared by the Brokers based on their separate agreement.

☐    Landlord and Tenant will each compensate their respective Brokers.

26.    OTHER PROVISIONS:   Supplemental agreements consisting of paragraphs #27 through #32, inclusive, are attached  hereto and made a part of this lease.

_____

Any additional provisions of this Lease shall be in writing and attached as an addendum hereto.

Until this Lease is executed on behalf of all parties hereto, it shall be construed as an offer to lease by Tenant to Landlord.

IN WITNESS WHEREOF, the parties hereto have executed this Lease the day and year first above written.

Byron Reed Company, Inc.                    Agent            Gennvan M. Scott & Mary Rollins
Landlord                                                                 Tenant

By  _____            By  _____
R. Michael Alt,

Its    President                                                  Its  _____

PERSONAL GUARANTEE

The undersigned hereby absolutely and unconditionally guarantee unto the Landlord the payment of the rent and the performance of all of the covenants under the Lease and all renewals and extensions thereof by the Tenant and hereby waive notice of any default under the Lease and agree that this liability shall not be released or affected by an extension of time for payment, by any forbearance by the Landlord, or by any assignment or modification of this lease.

Dated this _____ day of _____, 20____.

By: _____            By: _____

Name _____            Name _____

Street Address _____            Street Address _____

City, State Zip _____            City, State Zip _____

4

Supplemental agreements consisting of paragraphs #27 through #32, inclusive follow herewith and are made a part of a lease between Oltmanns Warehouse, Landlord, and Gennean Scott & Mary Rollins, Tenant, covering the premises known as 2929-2933 Keystone Drive, Omaha, Douglas County, Nebraska, for the period April 1, 2015 through March 31, 2018.

#27.  TAX ESCALATION: The landlord shall pay all regular consolidated real estate taxes levied and assessed against the Landlord's land and improvements, provided, however, the Tenant shall pay as additional rental, within ten (10) days after demand by the Landlord, the Tenant's pro rata proportion of any increase in said taxes over the base year of said taxes, which base year will be the taxes due 2015 to Douglas County. Said taxes being approximately $10,919.76. Increase in taxes as provided for in this paragraph shall be deemed to include any increase which results from an increase in mill levy or from an increase in assessed value. The Tenant's pro rata share is 25.00%.

#28.  CHARGE FOR USE OF COMMON AREAS: The Tenant shall pay to the Landlord all costs and expenses of every kind and nature paid or incurred by the Landlord during the lease term in operating, equipping, policing and protecting, lighting, repairing, and maintaining the common areas. Such costs and expenses shall include, but not be limited to maintaining the common areas, cleaning, fire protection, snow and ice removal, asphalt and concrete repairs and replacements, line striping, trash removal, costs and expenses of planting, replanting and replacing flowers and landscaping, water and sewer use fee charges, premiums for liability and property damage insurance, fees for required licenses and permits, supplies administrative costs equal to ten (10%) per cent of the total costs of operating and maintaining the common area and any other charges applicable to the maintenance and operation of the common area. The Tenant's proportionate share is 25.00% of the total charges. The Tenant shall be billed quarterly showing the amounts expended for such common area maintenance and shall pay such bill within ten (10) days.

#29.  PARKING: The Landlord hereby grants to Tenant, its Agents, employees, customers and invitees the non-exclusive right, during the term of this lease, to use for customer and employee parking only the parking area as may from time to time be designated by the Landlord. The use of said common parking shall be subject to reasonable regulations as the Landlord shall make from time to time.

#30.  SIGN CRITERIA: The Tenant may place signs in and about the demised premises except that the number, size, placement and design of all exterior signs and signs upon any common area or in any display window shall be subject to the Landlord's prior approval.

#31.  UNLICENSED AND/OR INOPERABLE VEHICLES: The Tenant agrees to remove all unlicensed and/or inoperable vehicles from the property upon seven (7) days written notice from Landlord or Landlord's Agent. Vehicles remaining on the property after such notification will be towed off the property at Tenant's expense.

#32.  ESSENCE DATE: Time being of the essence, this lease must be completed on behalf of all parties on or before April 7, 2015.

INITIAL MSR    INITIAL

5



2921-2941 Keystone Drive

EXHIBIT "A"



June 3, 2016

Gennean Scott &
Mary Rollins
2933 Keystone Drive
Omaha, NE 68134

### THREE DAY NOTICE TO VACATE

Under the terms of your Lease for <u>2933 Keystone Drive</u>, Omaha, Nebraska, you are to pay monthly installments of rent on or before the first of each month. Your failure to pay such amounts when due constitutes an event of default under the Lease. As of the date of this letter, you are currently in default with a total balance due of $<u>6,651.46</u>.

Payment in full will be accepted in the form of a cashiers check, money order or cash only.

In light of this default, Landlord has elected to exercise its rights under the terms of the Lease to take possession of the premises. This Notice is given pursuant to §25-21,221 of the Nebraska Revised Statutes, and if you do not leave the premises by the end of the third day after this Notice is served upon you, the Landlord or its managing agent will commence a forcible entry and detainer action in court to obtain possession of the premises. The Landlord's election to take possession of the premises is <u>not</u> a termination of your Lease and obligations. Therefore, you are contractually liable to pay rent to the Landlord for the remainder of your lease term.

Sincerely,

Blaine Stratton
Property Manager

BS/ac

K:\Managed Properties\Oltmanns\Correspondence\3-day notice.docx

**EXHIBIT**

"B"

## FAIR DEBT COLLECTION PRACTICES ACT NOTICE

1. This is an attempt to collect a debt and any information obtained will be used for that purpose.

2. The amount of the debt is stated in the Complaint.

3. The name of the creditor is stated in the Complaint.

4. Unless the debtor disputes the validity of the debt within thirty (30) days after receipt of the notice, it will be assumed that the debt is valid.

5. If the debtor notifies the lawyer within thirty (30) days that the debt is disputed, the lawyer will obtain verification of the debt or a copy of a judgment and mail it to the debtor.

6. The lawyer will provide the debtor with the name and address of the original creditor, if different from the current creditor, if the debtor requests this information within thirty (30) days.

